UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| v. | : | Criminal No. 1:12-cr- 00129 |
| | : | |
| **THOMAS W. GORE,** | : | |
| Defendant | : | |
| | : | |
| | : | |

# SENTENCING MEMORANDUM OF DEFENDANT THOMAS W. GORE

## Introduction

On July 26, 2013, Thomas W. Gore will appear before this Honorable Court for sentencing having pled guilty to a four count Information alleging three (3) counts of making a contribution in the name of another, aiding and abetting in violation of D.C. Code section 1-1131.01(e) and D.C. Code section 1-1805[1] , and one (1) count of obstruction of justice – destruction of records in a federal investigation - in violation of 18 U.S.C. section 1519. Through undersigned counsel, Mr. Gore submits this memorandum in support of a requested sentence of: (i) twenty for (24) months of probation that would include 300 hours of community service; and (ii) no fine or restitution, given his inability to pay a fine. Such a sentence is "sufficient, but not greater than necessary," to achieve the purposes of sentencing set forth in 18 U.S.C. section 3553(a)(2).

---

[1] These D.C. Code provisions have been revised as D.C. Code sections 1-1163.33(e) and 1-1163.35(b) respectively.

Mr. Gore has acknowledged that his crime was a serious breach of the standard of conduct that he expects from himself let alone the standard that is demanded by the law. Having pled guilty prior to indictment, he has fully accepted responsibility for his conduct and stands ready to accept the consequences of that conduct.

For the reasons explained below, imprisonment is not necessary to protect society from Mr. Gore, to provide him with rehabilitative treatment or training, or to achieve the goal of deterrence. Rather, in view of Mr. Gore's unequivocal acceptance of responsibility, his well-documented history of extraordinary community service, and the significant role he continues to perform as a family member, friend and mentor to others, the best means of attaining a sentence that is "sufficient, but not greater than necessary," to achieve the purposes of sentencing set forth in 18 U.S.C. section 3553(a)(2 is to impose the requested sentence.

## **Argument**

### **A.     The Proposed Sentence Is Warranted Under 18 U.S.C. section 3553(a)**

Section 3553(a) provides that a district court "shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2)," which are "the need for the sentence imposed-

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner."

In devising a sentence that satisfies the "overarching provision instructing sentencing courts to 'impose a sentence that is sufficient but not greater than necessary' to accomplish the goals of sentencing," *Kimbrough v. United States,* 552 U.S. 85, 101 (2007); *see also Pepper v. United States,* 131 S. Ct. 1229, 1242 (2011), a district court must also consider the nature and circumstances of the offense and the history and characteristics of the defendant, 18 U.S.C. section 3553(a)(1), the kinds of sentences available, 18 U.S.C. section 3553(a)(3), the sentencing guidelines and policy statements, 18 U.S.C. sections 3553(a)(4) & (a)(5), the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct, 18 U.S.C. section 3553(a)(6), and the need to make restitution to any victims of the offense, 18 U.S.C. section 3553(a)(7). *See also United States v. Booker,* 543 U.S. 220, 245-46, 259-60 (2005). The Supreme Court repeatedly has made clear that the range prescribed by the now-advisory Guidelines is but one of the sentencing court's considerations – "a starting point and initial benchmark" – and that the court must weigh all relevant Section 3553(a) factors to "make an individualized assessment based on the facts presented." *See Gall v. United States,* 552 U.S. 38, 50-52 (2007); *Pepper,* 131 S. Ct. at 1242-43.

Section 3553(a)(1) provides a "broad command to consider 'the nature and circumstances of the offense and the history and characteristics of the defendant.' " *Gall*, 552 U.S. at 50 n.6. That directive is consistent with the Supreme Court's observation that "the punishment should fit the offender and not merely the crime." *Pepper,* 131 S. Ct. at 1240, *citing Williams v. New York,* 337 U.S. 241, 247 (1949). It is similarly consistent with Congress' express directive that "[n]o limitation shall be placed on the information" a sentencing court may consider "concerning

the [defendant's] background, character, and conduct." *Id.*, *citing* 18 U.S.C. section 3661. Given Mr. Gore's personal history and characteristics, and the nature of his offense, a period of probation that includes community service is an appropriate sentence.

**Mr. Gore's Personal History and Characteristics**

   Mr. Gore was born in Washington, D.C., on July 9, 1955, to Werner Gore and Nettie Bell (nee: Boulware), and is a lifetime resident of the District.  When Mr. Gore was approximately 12 years of age, he and his siblings were placed in foster care because they were not attending school regularly and this was considered to be neglect on the part of his mother. Both his mother and father had spent time with him, cared for him, and treated him well until the time he was removed from the custody of his parents.  While living with his parents, Mr. Gore was never in trouble and he and his family attended church regularly.  Upon removal from his parents' home, Mr. Gore was first placed at Junior Village in the District.  Subsequently, Mr. Gore was placed by the Methodist Board of Child Care with a foster family- the Bradfords.

   Mr. Gore lived stayed with the Bradfords for approximately one year though his siblings remained with them through high school.  Because Mr. Gore continued to visit his mother without permission and return to the Bradford's home late, he was returned to Junior Village and then placed in temporary foster care until he was placed with Andrew L. Clark in approximately 1971.  Mr. Gore remained with Mr. Clark through high school and left Mr. Clark's home when he attended college in Baltimore.   Mr. Clark encouraged and supported Mr. Gore's visits to his mother's home and his relations with his mother and siblings.  Mr. Clark died in 1991 after suffering from stomach cancer.  Mr. Gore returned to Mr. Clark's home to live with Mr. Clark prior to his death and served as his caretaker while also attending graduate school at Howard University.

4

Mr. Gore graduated from Anacostia High School here in the District in 1975. He subsequently earned a Bachelor of Science degree in psychology at Morgan State University in 1979. Additionally, Mr. Gore earned a Master's degree in social work at Howard University in 1994. After earning his Master's degree, Mr. Gore assisted Professor Gary Gottfredson of the Counseling Department at the University of Maryland in a training and evaluation research project from 1994 to 1999.

Mr. Gore has not had permanent employment (he has been employed intermittently as a consultant) due to the uncertainty of his current situation. His hope is to secure permanent employment after his sentence has been determined. Mr. Gore has a long employment history extending back to his graduation from college. His more recent employment primarily has consisted of non-profit, social service work as executive director, supervising more than 150 employees and managing multi-million dollar budgets. Mr. Gore has also worked in the capacity of treasurer, vice president or president in various employment circumstances.

Mr. Gore has never married or fathered any children. He has, however, been the good son, the good brother, the good friend, and the good mentor throughout his life. As noted above, he moved back to the home of his foster father to care for him until his death of cancer. Since his parents' deaths, Mr. Gore has assumed responsibility for keeping his siblings focused and has been a strong presence in all their lives. His active role with his siblings has contributed greatly to the success of each of them. Each of his siblings has his or her own home, is educated, and has successfully reared their children. Mr. Gore has served as a mentor for his nephews, as well as a number of other youth through his involvement on youth interest boards and collaborative efforts. Mr. Gore maintains close relationships with all of his siblings dating from his regular visits with them while he was living in foster care with Mr. Clark.

Mr. Gore has also been a lead deacon of Ambassador Baptist Church here in the District. He has been a member of the Prince Hall Masons, a fraternity founded by Prince Hall in the 18th century, rooted in good character. He is a founding member of "Crew Rowing" to foster youth interest and involvement in rowing. He was a member of the Anacostia Coordinating Council which facilitated development of the East of the Anacostia River green line, and he also facilitated the Healthy Families Striving Communities Collaborative which is a neighborhood based effort to reduce abuse and neglect. Mr. Gore's life is replete with examples of his giving spirit which speaks to his true character. The instant offense is completely at odds with the life that Mr. Gore has lead for the last 58 years.

Mr. Gore is currently involved in a committed relationship with Ms. Judie Martin, who is executive pastor of church administration for Miracle Temple Church in Southeast, Washington, D.C. Mr. Gore and Ms. Martin are engaged to be married but have suspended any definitive plans pending resolution of this matter. Ms. Martin met Mr. Gore as they collaborated to establish a group home/life skills program including a spiritual component for youth in the District of Columbia. Ms. Martin has found Mr. Gore to be decent, kind, considerate, and always placing the best interests of others before his own. She finds that he is always doing things for others; is very honest and above reproach in dealing with others; is intensely loyal; and she has never met a kinder individual.

Ms. Martin and Mr. Gore's sister believe that Mr. Gore may need support in coming to terms with his criminal conviction and the circumstances resulting from the instant offense. His sister believes that Mr. Gore needs to find forgiveness for himself for his conduct in this matter as his family and friends already have.

**The Nature and Circumstances of the Offense**

Mr. Gore acknowledges that he has committed a serious crime. Mr. Gore in entering his guilty plea accepted, and continues to accept full responsibility for his actions in that regard. Beyond accepting responsibility for his wrongful conduct, Mr. Gore is prepared to accept the further consequences of that conduct.

Mr. Gore worked on the Gray for Mayor Campaign ("Gray Campaign"). He was the assistant treasurer for the campaign, managed the day-to-day finances of the campaign, and was a member of the campaign's treasury team. Mr. Gore is a long time friend of Vincent Gray and he previously served as treasurer of Vincent Gray's 2004 campaign for the Ward 7 Council seat and the 2006 campaign for Chairman of the Council of the District of Columbia. Howard Brooks also worked on the Gray Campaign and was a member of both the campaign's finance and treasury teams.

Beginning in or around June 2010, Mr. Gore and Howard Brooks discussed a plan to advance Vincent Gray's candidacy for Mayor by secretly diverting funds from the Gray Campaign to give to Sulaimon Brown for his campaign. Mr. Gore provided Howard Brooks with money orders which had been purchased with excessive or unattributed cash contributions to the Gray Campaign, to give to Sulaimon Brown for his campaign. Howard Brooks and/or others filled in the names and addresses of real persons who had not contributed these funds in the purchaser lines of money orders. Mr. Gore kept a record in a spiral notebook of the Gray Campaign money orders that he gave to Mr. Brooks that would in turn be given to Sulaimon Brown by Mr. Brooks noting the amounts of the money orders.

Between June 15, 2010 and July 2, 2010, Mr. Gore gave Howard Brooks five money orders totaling $660 which Mr. Gore knew were going to be given by Mr. Brooks to Sulaimon Brown for his campaign.

Allegations made by Sulaimon Brown against the Gray Campaign relating to payments from the Gray Campaign to Sulaimon Brown appeared in the media. Shortly thereafter, Mr. Gore shredded the spiral notebook in which he had kept a record of the Gray Campaign money orders that he had given to Mr. Brooks that would in turn be given to Sulaimon Brown by Mr. Brooks. Mr. Gore shredded the notebook because he knew that secretly diverting contributions from the Gray Campaign to the Brown Campaign was unlawful and he did not want anyone to include law enforcement authorities to find out about this diversion of funds.

Mr. Gore met with Mr. Brooks and they discussed, among other topics, what to tell law enforcement authorities about payments to Sulaimon Brown by the Gray Campaign. Mr. Gore told Mr. Brooks, that he "used to keep a record of what went to [Sulaimon Brown]," but that when the media reports of Sulaimon Brown's allegations surfaced, he "shredded it."

When Mr. Gore participated in a voluntary interview with three FBI agents and others, Mr. Gore made statements that he knew to be false and misleading to the FBI. To wit:

> That he and Howard Brooks had not discussed the records of anything provided to Sulaimon Brown;
>
> That he never maintained records of anything given to Sulaimon Brown; and
>
> That he maintained a spiral notebook and record of the money given to Sulaimon Brown, but that he shredded that notebook approximately one week after the general election.

Mr. Gore knew when he made these statements that that they were untrue. Mr. Gore deeply regrets making those false statements.

In an effort to begin making amends for his conduct, Mr. Gore has cooperated with federal authorities in an effort to provide assistance in furthering the investigation and prosecution of illegal activities here in the District. Mr. Gore also recognizes and regrets the negative impact his actions have had within the District. His conduct has brought shame upon, his family, and himself. The embarrassment that he has caused his family and friends has been the worst for him, and he is doing all he can to make amends to them.

As his life arc clearly shows, Mr. Gore has served as a role model to family, friends and many others, especially to the many young people whom he has mentored. His personal story of success and achievement has been inspirational and aspirational for others who like him begin life's journey under difficult circumstances. He hopes that his acknowledgement of wrongdoing, his full acceptance of responsibility, and his cooperation with the federal authorities, will allow him to begin the process of correcting his errors. His hope is that his acknowledgement of his wrongdoing can begin to set him back on the road that he was on before he made this terrible exercise in judgment.

Mr. Gore is absolutely clear about the adverse impact that his wrongdoing has had in diminishing the respect that citizens of the District have for the electoral process. Mr. Gore fully understands that his conduct has added to the poor image of the District at a time when that image is under substantial question. Throughout the great majority of his adult life, Mr. Gore has been a contributor to a positive image of his hometown. On this occasion, he did not make that positive difference, and he is genuinely remorseful about that.

### B.  The Requested Sentence Is Authorized

A sentence of twenty four (24) months that includes community service is not precluded by any statute or by the sentencing guidelines. The requested sentence would be consistent with

Congress' directive that "sentencing decisions should be designed to ensure that prison resources are, first and foremost, reserved for those violent and serious offenders who pose the most dangerous threat to society," Pub. L. No. 98-473, § 239, 98 Stat. 1987, 2039 (1984) (set forth at 18 U.S.C. § 3551. Mr. Gore does not pose a dangerous threat to society.

### C. The Guidelines Calculation

Pursuant to the plea agreement, Mr. Gore's total offense level is 13 and his advisory guidelines range is 12-18 months for Count 4.[2] This calculation is based upon a base offense level of 14 for the obstruction of justice conviction, a upward departure of 2, and a downward adjustment for acceptance of responsibility 3 levels pursuant to USSG section§ 3E1.1(a). Mr. Gore, a first time offender with a criminal history score of zero, falls under criminal history category I, which leads to a sentencing guidelines range of 12-18 months. This is the calculation reflected in the plea agreement reached between Mr. Gore and the government, and the United States probation office agrees with this calculation. With respect to Counts 1-3, the maximum term of imprisonment is six (6) months for each count. The District of Columbia Code does not have provisions authorizing supervised release for misdemeanors such as those included in Counts 1-3. Under the relevant provisions of District of Columbia Code, Mr. Gore would be eligible for a term of probation which shall not exceed five (5) years for each count. Should the Court choose to impose a term of probation for Counts 1-3, the Court may 1) suspend the imposition of sentence, 2) impose the sentence and suspend the execution of the sentence, 3) or impose the sentence and suspend the execution of a portion of the sentence. DC Code sections 16-710 and 16-710(b).

---

[2] The Federal Sentencing Guidelines do not apply to Counts 1-3 which are District of Columbia Code offenses.

### D. The Need to Avoid Unwarranted Disparities

The requested sentence would not create a disparity, much less an unwarranted disparity, among defendants with similar records who have been found guilty of similar conduct. 18 U.S.C. section 3553(a)(6). Conversely, a sentence providing for an executed sentence of imprisonment would fit neither the offense, nor this offender. As discussed above, Mr. Gore acknowledges the serious nature of his actions, accepts full responsibility for his misconduct, and does not suggest that what he did should be excused, condoned, or minimized. Yet he has pled guilty to conduct that, though deserving of criminal punishment, does not necessitate a sentence of incarceration.

Mr. Gore has cooperated as fully as he could with the government in its investigation of his conduct and with respect to other matters. This cooperation also underscores the fact Mr. Gore is deserving of the requested sentence, and that a sentence of incarceration for any time period would not fit this offender.

### E. The Requested Sentence Is Sufficient, But Not Greater than Necessary, to Satisfy the Purposes of Punishment

The requested sentence plus community service will achieve retributive justice, and is sufficient, but not greater than necessary, to satisfy the purposes of punishment as articulated in 18 U.S.C. section 3553(a)(2). Specifically, the punishment reflects the seriousness of the offense, promotes respect for the law, and provides just punishment for the offense; it affords adequate deterrence; and, it protects the public from further crimes of Mr. Gore. Mr. Gore is a non-violent, first-time offender, with a respected record of positive contributions to his community. He has fully accepted responsibility for his conduct, having pled guilty pre-indictment, and he has expressed genuine remorse. Mr. Gore has demonstrated respect for the law by cooperating with law enforcement, and providing assistance in the government's ongoing investigations. The

stigma of a federal felony conviction, and the highly publicized nature of Mr. Gore's guilty plea constitute substantial punishment for Mr. Gore, as he has suffered public humiliation and intense media scrutiny as a result of his actions. He has already been subjected to embarrassment and shame in front of his family, and friends. Along with the requested sentence which would include community service, this degree of humiliation achieves retributive justice that fits the crime. With regard to deterrence, the requested punishment is an adequate and appropriate penalty that will serve the purpose of deterring Mr. Gore from breaking the law again. The highly publicized nature of these proceedings also serves as a unique and significant deterrent to others who may consider committing similar crimes in the future. Mr. Gore has been shaken to his core by the events that have unfolded over the past months. Not only is he genuinely remorseful about his misconduct, he is determined to make a positive example of himself so that others in his community can learn from his mistakes. With regard to protecting the public, Mr. Gore poses no danger to society that would require his incarceration.

## **Conclusion**

For the foregoing reasons, Mr. Gore respectfully requests that the Court impose a sentence of twenty four (24) months of probation that includes 300 hours of community service, and no fine or restitution.

Respectfully submitted,

/s/ Frederick D. Cooke, Jr.
_____

Frederick D. Cooke, Jr., D.C. Bar No. 164608
Rubin, Winston, Diercks, Harris & Cooke, LLP
1201 Connecticut Avenue, NW, Suite 200
Washington, D. C. 20036
202 861 0870
202 429 0657 (facsimile)
fcooke@rwdhc.com

Counsel for Defendant Thomas W. Gore

## CERTIFICATE OF SERVICE

I, Frederick D. Cooke, Jr., do hereby certify that on this 28th day of June, 2013 a copy of the foregoing Sentencing Memorandum of Defendant Thomas W. Gore was caused to be served by ECF to the following:

> Ellen Chubin Epstein, Esq.
> Assistant United States Attorney
> Office of the United States Attorney
> for the District of Columbia
> 555 4th Street, NW
> Washington, D.C. 20530

/s/ Frederick D. Cooke, Jr.
_____
Frederick D. Cooke, Jr